BRORBY, Circuit Judge.
Petitioner Charles Foster appeals the denial of his petition for a writ of habeas corpus seeking to overturn his capital murder conviction and death sentence. We affirm.
BACKGROUND
Mr. Charles Foster was tried in Oklahoma state court on an information alleging first degree murder as well as burglary and larceny. After a two-day trial, a jury convicted Mr. Foster for the murder of Claude Wiley, a seventy-four-year-old grocery store owner who disappeared on April 1, 1983, while making deliveries. Mr. Wiley’s last delivery was to the home of Charles and Eula May Foster. His body was discovered near an abandoned house in Muskogee ten days later. Mr. Wiley suffered multiple stab wounds to the chest, blunt force lacerations to the head and face, and an extensive skull fracture.
The State originally charged both Mr. and Mrs. Foster with Mr. Wiley’s murder. However, prosecutors later reduced the charge against Mrs. Foster to “accessory after the fact.” Mrs. Foster was the State’s key witness. She testified at trial Mr. Foster was hiding behind the front door with a baseball bat when Mr. Wiley first entered their house. After accusing Mr. Wiley of having “something to do” with Mrs. Foster, Mr. Foster pushed Mr. Wiley, repeatedly struck him with the bat, and then wrapped him in a blanket and left in Mr. Wiley’s El Camino. Mrs. Foster further testified that Mr. Foster returned home after about forty-five minutes, and then left again fifteen minutes later for approximately one and a half hours. When Mr. Foster returned the second time, he had in his possession a number of items from Mr. Wiley’s home. Soon after Mr. Foster’s return, the couple fled to Texas in Mr. Wiley’s El Camino. Mrs. Foster denied knowing that Mr. Foster intended to attack and kill Mr. Wiley when he delivered the groceries to their house. She further denied ever striking or stabbing Mr. Wiley.
In rebuttal, Mr. Foster testified his wife had sent him to the grocery store around 6:20 p.m. on April 1, 1983. He picked up the groceries she requested and then waited outside the store for awhile because it was raining. He testified that at about 7:50 p.m. his wife came to the grocery store in Mr. Wiley’s El Camino. She told him she had borrowed the El Camino and they were going to visit her mother in Texas. Mr. Foster consistently denied any knowledge of Mr. Wiley’s murder, but admitted pawning some of Mr. Wiley’s possessions at his wife’s request.
One of Mr. Foster’s former cell-mates, Mr. Jody Lynch, testified during the sentencing stage that Mr. Foster had admitted killing Mr. Wiley and wrapping him in a blanket, and had threatened to kill Mrs. Foster and her family. Mrs. Foster also testified during the sentencing stage. She told the jury of the physical abuse she had suffered at Mr. Foster’s hands, and explained that upon her arrest, she asked the police to protect her from Mr. Foster. Detective Grayson corroborated Mrs. Foster’s testimony concerning her fear of Mr. Foster.
During the sentencing stage, Mr. Foster told the jury about his family and educational background, his work history, and his prior run-ins with law enforcement. He maintained he did not kill Mr. Wiley and denied admitting the murder to Mr. Lynch. He further denied threatening to kill Mrs. Foster and her family or ever abusing Mrs. Foster. Rather, he claimed Mrs. Foster once stabbed him in the shoulder. Mr. Foster stipulated on the record he had previously been convicted of two felonies involving the use or threat of violence.
After hearing this evidence and considering it together with the evidence presented during the guilt stage of trial, the jury found three aggravating circumstances in support of the death penalty: (1) Mr. Wiley’s murder was especially hei *1183 nous, atrocious or cruel; (2) Mr. Foster posed a continuing threat to society; and (3)Mr. Foster previously had been convicted of a felony involving the use or threat of violence. Accordingly, on November 28, 1983, the trial court sentenced Mr. Foster to death.
Mr. Foster took a direct appeal to the Oklahoma Court of Criminal Appeals. That court affirmed his conviction and sentence. Foster v. Oklahoma, 714 P.2d 1031 (Okla.Crim.App.), cert. denied, 479 U.S. 873, 107 S.Ct. 249, 93 L.Ed.2d 173 (1986). He later filed an application for post-conviction relief in the District Court of Muskogee County. The district court denied relief and was affirmed on appeal to the Oklahoma Court of Criminal Appeals. Foster v. Oklahoma, No. PC-87-729 (Okla.Crim.App. May 5, 1988). The United States Supreme Court subsequently granted certiorari and remanded Mr. Foster’s case to the Oklahoma Court of Criminal Appeals for reconsideration in light of Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). Foster v. Oklahoma, 488 U.S. 884, 109 S.Ct. 212, 102 L.Ed.2d 204 (1988). On remand, the Oklahoma court again denied post-conviction relief. Foster v. Oklahoma, 779 P.2d 591 (Okla.Crim.App.1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3293, 111 L.Ed.2d 801 (1990). Mr. Foster filed a second application for post-conviction relief, which was also denied and then affirmed on appeal. Foster v. Oklahoma, No. PC-93-1020 (Okla.Crim.App. Jan. 20, 1995). Mr. Foster filed his federal habeas petition in June 1995. The district court denied relief in June 1997, and denied Mr. Foster a certificate of appealability.
Applying Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), we conclude a certificate of appeal-ability is not a jurisdictional requirement in this appeal since Mr. Foster’s petition was filed before April 24, 1996, the enactment date of the Antiterrorism and Effective Death Penalty Act (“AEDPA”). The version of 28 U.S.C. § 2253 applicable to this appeal requires a certificate of probable cause. In his brief on appeal, Mr. Foster acknowledges this requirement and requests that this court issue a certificate of probable cause. Because we conclude Mr. Foster has made a “substantial showing of the denial of [a] federal right,” Barefoot v. Estelle, 463 U.S. 880, 893, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983) (internal quotation marks and citation omitted), we grant a certificate of probable cause and proceed to consider Mr. Foster’s petition, applying pre-AEDPA law.
DISCUSSION
Mr. Foster raises five issues on appeal from the denial of his habeas petition: (1) ineffective assistance of counsel during both the guilt and sentencing stages of trial; (2) denial of a post-examination competency hearing; (3) failure to disclose the true nature of lenient treatment provided Mrs. Foster in exchange for her testimony; (4) failure to instruct the jury regarding Mrs. Foster’s status as an accomplice; and (5) unconstitutionality of sentencing stage jury instructions concerning aggravating and mitigating circumstances.
We review the district court’s legal conclusions concerning these issues de novo and its factual findings for clear error. Hill v. Reynolds, 942 F.2d 1494, 1495 (10th Cir.1991). Habeas relief must be granted only if the claimed constitutional error “ ‘had substantial and injurious effect or influence in determining the jury’s verdict.’ ” Kyles v. Whitley, 514 U.S. 419, 436, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (quoting Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). If we are in “grave doubt” about whether an error satisfies that standard, then the error cannot be treated as harmless and the petitioner must prevail. O’Neal v. McAninch, 513 U.S. 432, 437-38, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).
I. Ineffective Assistance of Counsel
Mr. Foster’s ineffective assistance of counsel claim presents a mixed question of fact and law we review de *1184 novo. Williamson v. Ward, 110 F.3d 1508, 1513 (10th Cir.1997). To prevail on this claim, Mr. Foster must first demonstrate his counsel “committed serious errors in light of ‘prevailing professional norms’ ” such that his legal representation fell below an objective standard of reasonableness. United States v. Haddock, 12 F.3d 950, 955 (10th Cir.1993) (quoting Strickland v. Washington, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). If Mr. Foster demonstrates constitutionally deficient performance, he must then show prejudice — “a ‘reasonable probability’ that the outcome'would have been different had those errors not occurred.” Haddock, 12 F.3d at 955 (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052). This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one. Strickland, 466 U.S. at 697, 104 S.Ct. 2052.
Because we can fully resolve Mr. Foster’s ineffective assistance of counsel claim on the record before us, we conclude he is not entitled to an evidentiary hearing on this issue as he suggests. See Shillinger v. Haworth, 70 F.3d 1132, 1138 (10th Cir.1995); Scrivner v. Tansy, 68 F.3d 1234, 1242 (10th Cir.1995), cert. denied, 516 U.S. 1178, 116 S.Ct. 1277, 134 L.Ed.2d 223 (1996).
A. Guilt Stage
■ Mr. Foster complains he was prejudiced at the guilt stage of his trial by his counsel’s failure to investigate and’ discover available witnesses to support his alibi defense, request a post-examination competency hearing, adequately advise him whether to testify on his own behalf, request an accomplice instruction, object to the alibi instruction, and object to the introduction of motel and pawn shop receipts. Mr. Foster further claims prejudice as a result of his counsel’s “invitation” to the court to admit Mrs. Foster’s written statement to police into evidence. We consider each alleged instance of ineffective assistance in turn.
1. Alibi Witnesses. Mr. Foster’s ineffective assistance of counsel claim centers in large part on his allegation that trial counsel failed to investigate and discover witnesses who would have supported his alibi defense. Specifically, Mr. Foster proffers the affidavits of Ms. Cecille Fuller and Mr. Alvin Williams, two individuals who worked at Weddles grocery store— the grocery store Mr. Foster claims to have been at when Mr. Wiley was murdered. According to Mr. Foster, “[t]his impartial testimony unquestionably would have had an effect on [his] jury.”
Both Ms. Fuller’s and Mr. Williams’ affidavits were prepared ten years after Mr. Foster’s trial, thus raising questions as to their veracity. However, since the State has not rebutted either affidavit, we will treat the factual allegations contained therein as true. See Williamson, 110 F.3d at 1513. Moreover, we assume without deciding that it is unreasonable for counsel not to attempt to identify and contact alibi witnesses to ascertain whether their testimony would aid the defense, and because the record offers no explanation as to why defense counsel did not identify or interview these alibi witnesses, we will assume for purposes of our analysis that defense counsel was constitutionally ineffective for failing to investigate and present available alibi testimony.
This does not end our inquiry, however. Under the holding in Strickland, Mr. Foster cannot prevail on his ineffective assistance of counsel claim unless he establishes prejudice in addition to constitutionally deficient performance. Strickland, 466 U.S. at 693, 104 S.Ct. 2052 (defendant is required to “affirmatively prove prejudice”). We proceed, then, to determine whether Mr. Foster has demonstrated a reasonable probability that, but for his counsel’s failure to interview and call alibi witnesses, he would have been acquitted. See Strickland, 466 U.S. at 694, 104 S.Ct. 2052; Lawrence v. Armontrout, 31 F.3d 662, 667-68 (8th Cir.1994); cert. denied, 513 U.S. 1161, 115 S.Ct. 1124, 130 *1185 L.Ed.2d 1087 (1995). “A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 694, 104 S.Ct. 2052.
Considering the totality of the evidence before the jury in this case, id. at 695, 104 S.Ct. 2052, we conclude defense counsel’s omission of alibi evidence does not undermine our confidence in the guilty verdict.[1] This is not a case in which counsel presented no alibi defense. Mr. Foster himself testified that at his wife’s request he walked from his home to Weddles grocery store, soon after he and his wife got home from shopping together at that same store. He left home at about 6:20 p.m., arrived at the store at about 6:40 p.m., bought mushrooms, lettuce, and tomatoes, and then remained in the store for about thirty-five to forty minutes waiting for the rain to stop.[2] According to Mr. Foster, Mrs. Foster picked him up in front of Weddles grocery store in Mr. Wiley’s El Camino truck. There were suitcases in the front of the truck and “other stuff’ covered by a blanket in the back end. Mrs. Foster told Mr. Foster they were going to Texas to visit her mother. Mr. Foster denied any knowledge of Mr. Wiley’s murder in the Foster’s home.
Ms. Fuller’s affidavit largely parrots, and is therefore cumulative of, Mr. Foster’s testimony.[3] Accordingly, the real val *1186 ue of Ms. Fuller’s testimony to the defense is that of corroboration by what appears to be a disinterested witness. While we do not discount that value, after weighing the materiality and probable effect of Ms. Fuller’s testimony against the strength of the prosecution’s case, id. at 694, 104 S.Ct. 2052, we conclude the mere possibility that Ms. Fuller’s testimony could reflect on Mr. Foster’s credibility is insufficient to satisfy the “reasonable probability” standard. Ms. Fuller’s affidavit adds nothing in terms of details sufficient to strengthen Mr. Foster’s alibi or otherwise create a reasonable doubt as to Mr. Foster’s guilt.[4] The time frames Ms. Fuller recalls Mr. Foster being in the store on the evening of Mr. Wiley’s murder are general and simply do not preclude the possibility of his involvement in the murder. Moreover, we cannot ignore the fact Ms. Fuller’s recollection some ten years after Mr. Wiley’s murder would be subject to intense cross-examination at trial. Finally, we give little if any weight to Mr. Williams’ affidavit, which offers no alibi evidence but merely vouches for Ms. Fuller’s good memory and tendency to talk to “everybody including Charles Foster.” See United States v. Charley, 176 F.3d 1265 (10th Cir.1999).
We admit this is a closer case than some since the State’s only eyewitness was an accomplice; nonetheless, the prosecution did present strong circumstantial evidence of Mr. Foster’s guilt. Specifically, the prosecution placed Mr. Wiley in the Fosters’ home at the time of his murder. The investigating officers, forensic dentist and medical examiner described in detail the nature of the crime scene and injury to Mr. Wiley. The jury certainly could conclude from the force with which Mr. Wiley was beaten, the fact the Fosters’ bloodstained sofa had been moved across the room and stood on end, and the removal and concealment of Mr. Wiley’s body, that Mrs. Foster could not have acted alone in this crime while Mr. Foster was picking up a few groceries. Importantly, Mrs. Foster’s testimony concerning how Mr. Foster killed Mr. Wiley was consistent with the rest of the prosecution’s evidence and remained consistent from the time she was arrested to Mr. Foster’s trial. Finally, the jury could infer guilt from the fact that, despite his proclaimed innocence, Mr. Foster ran from police when they apprehended Mrs. Foster in Ft. Worth, Texas.[5] Because we conclude there is no reasonable probability additional evidence pertaining to Mr. Foster’s alibi defense would have created a reasonable doubt respecting his guilt, see Strickland, 466 U.S. at 695, 104 S.Ct. 2052, Mr. Foster has failed to satisfy the constitutional standard. We therefore deny his request for habeas relief on this claim.
2. PosiAExamination Competency Hearing. As discussed in Part II below, Mr. Foster’s claim he was entitled to a post-examination competency hearing is without merit. Thus, his claim that counsel was ineffective for failing to request such a hearing likewise fails. Cf. Cooks v. Ward, 165 F.3d 1283, 1296-97 (10th Cir.1998) (counsel’s failure to pursue nonmeri-torious issues on appeal does not constitute ineffective assistance), petition for cert, filed (U.S. May 14, 1999) (No. 98-9420). ;
3. Mr. Foster’s Decision to Testify. Mr. Foster asserts his trial counsel “failed to provide [him] with any advice on whether he should testify in his own defense.” The record plainly refutes this frivolous claim. As the district court not *1187 ed, the record demonstrates Mr. Foster’s counsel advised him of his options and the possible effects of each option, and then gave him time by himself to think about whether he wanted to testify. When asked by the trial judge whether he understood he had the right to remain silent and hold the State to its burden of proving his guilt beyond a reasonable doubt, Mr. Foster said, “yes.” Mr. Foster also stated he understood if he chose to testify, the State would have the opportunity to call rebuttal witnesses and could inquire as to his previous convictions. Mr, Foster assured the court no one was putting any pressure on him to testify or recommending that he not take the witness stand. Accordingly, we find no factual support for Mr. Foster’s claim his counsel failed to advise him on whether to testify, and certainly no evidence of prejudice.
4. Accomplice Instruction. For the reasons discussed in Part IV below, Mr. Foster cannot obtain habeas relief by claiming he was entitled to a cautionary instruction regarding Mrs. Foster’s testimony. For those same reasons he cannot prevail on his claim his counsel was ineffective for failing to request such an instruction. Cf. Cooks, 165 F.3d at 1296-97.
5. Alibi Instruction. Mr. Foster complains he “was deprived of a fair and impartial trial because the alibi instruction did not allocate the burden of proof properly.” According to Mr. Foster, the instruction “did not place the burden of proof squarely on the shoulders of the prosecution,” as required by OMahoma law. He thus asserts his trial counsel was ineffective for failing to object to the instruction given.
The court instructed the jury, in relevant part:
The law is that [the alibi] defense is proper and legitimate and you should consider all of the evidence bearing thereon, whether introduced by the State or by the defendant, and if after a careful consideration of all of the evidence in the case you entertain a reasonable doubt as to whether the defendant was present at the time and place where the crime was committed, if it was committed, then and in that event the jury should give the defendant the benefit of the doubt and acquit him.
The court also instructed the jury:
The defendant is presumed innocent of the crimes charged, and the presumption continues unless, after consideration of all the evidence, you are convinced of his guilt, beyond a reasonable doubt. The State has the burden of presenting the evidence that established guilt beyond a reasonable doubt. The defendant must be found not guilty unless the State produces evidence which convinces you beyond a reasonable doubt of each element of the crimes.
The instructions pertaining to the specific crimes with which Mr. Foster was charged reemphasized the prosecution’s burden of proof beyond a reasonable doubt.
In habeas proceedings, we will set aside a state court conviction based on an erroneous jury instruction only if the erroneous instruction rendered the trial so fundamentally unfair as to deny the petitioner a fair trial and due process of law. Tyler v. Nelson, 163 F.3d 1222, 1227 (10th Cir.1999). The jury instructions in this case, read together, quite obviously and appropriately placed the burden on the prosecution to prove Mr. Foster’s guilt beyond a reasonable doubt. We fail to see how the instructions in any way undermined the jury’s responsibility to find the ultimate facts beyond a reasonable doubt. Accordingly, the instructions did not render Mr. Foster’s trial fundamentally unfair. Mr. Foster’s ineffective assistance claim pertaining to the alibi defense instruction fails.
6. Admission of Motel and Pawn Shop Receipts. Mr. Foster asserts his trial counsel should have raised a hearsay objection to the State’s admission of a receipt from the Jackson Motel in Denison, Texas, showing a registration to “Charles Jackson,” as well as a receipt from the *1188 AAA Trading Post in Denison showing “Clifton Foster” pawned a television stand, two lamps, a radio, and a watch. He claims “[t]he admission of this evidence was highly prejudicial, because it was used by the prosecution in closing argument in an effort to show [he] was being untruthful.”
It is precisely because the prosecution used this evidence to attack Mr. Foster’s credibility, not to prove he checked into the Jackson Motel and pawned Mr. Wiley’s belongings, that Mr. Foster’s claim must fail. The prosecution clearly used the motel registration and pawn shop receipt to show the jury Mr. Foster lied about his name shortly after the murder, yet claimed he didn’t know anything had happened to Mr. Wiley. Evidence presented to impeach the witness rather than establish the truth of the matter asserted is not hearsay. See Fed.R.Evid. 801(c); Foster v. General Motors Corp., 20 F.3d 838, 839 (8th Cir.1994). Thus, Mr. Foster’s counsel cannot be said to have been ineffective for failing to make a hearsay objection.
If defense counsel had a sustainable objection to such evidence, it probably would have been an objection for lack of foundation. The crux of Mr. Foster’s challenge to the admission of the motel registration and pawn shop receipt is that the documents were admitted without a sponsoring witness. However, even assuming counsel should have objected to the admission of the receipts due to lack of foundation, we find no prejudice. Although Mr. Foster did not admit using aliases, he testified he and Mrs. Foster stopped at the Jackson Motel in Denison, and he was the one who went in and registered. He further admitted pawning Mr. Wiley’s property in Denison. Mrs. Foster corroborated these facts and specifically identified the motel registration. Under these circumstances, we conclude there is no reasonable probability the jury would have reached a different result had Mr. Foster’s counsel objected to the introduction of the motel and pawn shop receipts into evidence.
7. Admission of Mrs. Foster’s written statement. Mr. Foster also challenges his counsel’s suggestion that, rather than adopt the prosecution’s conclusion that Mrs. Foster’s written statement and trial testimony were consistent, the jury should read Mrs. Foster’s written statement to determine whether it differed from her trial or preliminary hearing testimony. According to Mr. Foster, that suggestion invited the admission of Mrs. Foster’s written statement, which contained prejudicial hearsay statements Mr. Foster’s relatives made after Mr. Wiley’s murder, and hearsay evidence of prior crimes.
Without ruling on whether trial counsel’s conduct was ineffective or whether Mrs. Foster’s written statement was admissible evidence, we conclude Mr. Foster suffered no prejudice as a result of that statement being introduced into evidence. Like the district court, we simply do not believe the arguably inadmissible portions of Mrs. Foster’s statement had any impact on the jury’s verdict. The written statement notwithstanding, the jury heard admissible testimony from Mrs. Foster concerning Mr. Foster’s history of domestic violence, his role in Mr. Wiley’s murder, and the circumstances surrounding the couple’s flight from OWahoma. Mr. Foster availed himself of the opportunity to rebut Mrs. Foster’s claims when he took the stand. Under these circumstances, we find no basis for habeas relief on this claim.
B. Sentencing Stage
At the sentencing stage, Mr. Foster asserts he was prejudiced by his counsel’s failure to investigate, discover, prepare, and present mitigation evidence. Specifically, he claims the jury would not have sentenced him to death if, during the sentencing stage, his counsel would have presented to the jury (1) evidence pertaining to Mr. Foster’s tragic familial and societal background, including his mental retardation and brain damage; (2) the testimony of Cora Washington, his ex-wife; and (3) *1189 the testimony of Billy Dixon, a cell-mate of Mr. Foster’s and State’s witness, Mr. Lynch.
Without deciding whether Mr. Foster’s trial counsel was ineffective for failing to investigate, prepare or present potential mitigation evidence at the sentencing stage, we conclude Mr. Foster has failed to demonstrate a reasonable probability that the above-referenced evidence would have changed the jurors’ minds. We have on numerous occasions determined that evidence of a troubled childhood involving physical, emotional, sexual and/or substance abuse does not outweigh evidence supporting the conviction and evidence supporting multiple aggravating circumstances; nor does evidence of low I.Q. and/or organic brain damage. See, e.g., Cooks, 165 F.3d at 1298-96; Castro v. Ward, 138 F.3d 810, 831-32 (10th Cir.), cert. denied, — U.S. -, 119 S.Ct. 422, 142 L.Ed.2d 343 (1998); Nguyen v. Reynolds, 131 F.3d 1340, 1347-49 (10th Cir.1997), cert. denied, — U.S. -, 119 S.Ct. 128, 142 L.Ed.2d 103 (1998). Mr. Foster has not shown his case is an exception. Indeed, while there may have been additional available mitigating evidence, Mr. Foster took the witness stand on his own behalf and told the jury he was the second oldest of approximately nineteen children and left school after the eighth grade to join the Job Corps in order to help take care of his parents. The jury nevertheless sentenced Mr. Foster to death.
We further conclude neither Ms. Washington’s nor Mr. Dixon’s testimony would have changed the result. Mr. Foster claims Ms. Washington was willing to testify that he had told her Mrs. Foster had killed a man and then “lied on him,” and that during the seven years they were married he was always employed and never physically violent. Such testimony would have been largely cumulative to Mr. Foster’s testimony. Mr. Foster told the jury in no uncertain terms that Mrs. Foster’s testimony was not true. He also told the jury he was not violent with Mrs. Foster except on one occasion when she attempted to stab him. Mr. Foster further testified as to his work history. Under the circumstances, we believe Ms. Washington’s testimony would have added little if anything to Mr. Foster’s defense.
Mr. Dixon would have testified he never heard Mr. Foster discuss his case with anyone, especially Mr. Lynch, who was white. However, such testimony actually would have contradicted Mr. Foster’s admission that he did, in fact, speak to Mr. Lynch “once or twice” while they were in the same jail “tank.” Mr. Foster testified he told Mr. Lynch about the charges he faced. Consequently, we doubt the jury would have given Mr. Dixon’s testimony any weight whatsoever.
In sum, the evidence against Mr. Foster, the number of aggravating factors found by the jury, and the nature of Mr. Wiley’s murder leaves little doubt the mitigating evidence Mr. Foster relies on would not have changed the jury’s decision to impose the death penalty. Because Mr. Foster fails to satisfy Strickland’s prejudice requirement, we deny his request for habeas relief on this ground. ¿
II. Post-Examination Competency Hearing
Mr. Foster claims that although he was evaluated at Eastern State Hospital and determined by the chief forensic psychiatrist to be competent to stand trial, Oklahoma law nevertheless entitled him to a post-examination hearing and judicial determination of competency prior to trial. According to Mr. Foster, the trial court’s failure to conduct a post-examination hearing deprived him of his constitutional right not to be tried while incompetent — a due process right which cannot be waived. Because Mr. Foster does more than challenge a factual competency determination, we are not limited by the clearly erroneous standard. Rather, we review his competency claim de novo. See United States v. Williams, 113 F.3d 1155, 1160 (10th Cir.1997).
*1190 On its face, Mr. Foster’s brief raises a single constitutional due process claim. On closer examination, however, we interpret Mr. Foster’s argument to incorporate two distinct claims. First, Mr. Foster argues he was improperly denied a post-examination competency hearing as provided by Oklahoma statute. Second, he argues his federal due process rights were violated when he was tried even though a doubt existed as to his competency. We consider each claim in turn.
At the time of Mr. Foster’s trial, Oklahoma law required that a post-examination hearing be held in every case in which a competency examination was conducted, whether or not the defendant requested such a hearing. See Scott v. Oklahoma, 730 P.2d 7 (Okla.Crim.App.1986) (applying Okla. Stat. tit. 22, § 1175.4(A) (1981)).[6] There is no dispute Mr. Foster did not request, and was not afforded, a post-examination competency hearing. Nevertheless, the Oklahoma Court of Criminal Appeals and the federal district court each concluded since Mr. Foster failed to raise this claim on direct appeal, he waived his right to assert it in his application for post-conviction relief or habeas petition. Mr. Foster argues the Constitution prohibits the waiver of such a right.
Indeed, the general rule barring our consideration of issues not raised on direct appeal does not apply to substantive mental competency claims. See Nguyen, 131 F.3d at 1346. Mr. Foster’s first competency claim cannot, however, fairly be characterized as a substantive mental competency claim. The post-examination competency hearing he was denied is a creation of state statute. Federal law mandates that a criminal defendant may not be tried while incompetent, Godinez v. Moran, 509 U.S. 389, 396, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993); Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); it does not mandate that state courts provide a post-examination competency hearing. Thus, Mr. Foster’s first claim is best characterized as a state procedural claim. As such, we conclude the state court’s decision to bar that claim from further review, as it consistently does with all claims that could have been raised on direct appeal, was based on adequate state law grounds, independent of any mental competency claim grounded in the federal constitution. In other words, to the extent the state court deemed Mr. Foster’s competency claim procedural and not substantive, we agree it was defaulted unless Mr. Foster can demonstrate cause for his failure to raise the claim on direct appeal, and actual prejudice resulting from such failure. He makes no such showing. We therefore deny relief on his procedural competency claim and proceed to consider the merits of his second claim.
The trial of an incompetent defendant violates federal substantive due process rights. Nguyen, 131 F.3d at 1346 (citing Cooper v. Oklahoma, 517 U.S. 348, 354, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996)). Thus, Mr. Foster’s second competency claim is substantive in nature and cannot be barred from review by this court. However, having carefully reviewed the record, we find no support for Mr. Foster’s claim he was tried and convicted while a serious doubt existed as to his competency.
“Competence to stand trial requires that a defendant have ‘sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding’ and ‘a rational as well as factual understanding of the proceedings against him.’ ” Nguyen, 131 F.3d at 1346 (quoting Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. *1191 788, 4 L.Ed.2d 824 (I960)). Although the trial court found sufficient doubt as to Mr. Foster’s competency to grant his request for a psychological evaluation, that initial doubt was dispelled by the State Hospital’s conclusion Mr. Foster was indeed capable of understanding the exact nature of the proceedings against him and would be able to adequately advise and assist legal counsel. The record establishes Mr. Foster did, in fact, consult with his lawyer and had both a rational and factual understanding of the proceedings against him. Most telling is the fact Mr. Foster took the witness stand and testified in his own defense. Mr. Foster’s behavior on the stand was neither irrational nor unusual. His testimony was responsive to the questions asked, logical, and coherent. In addition, the trial judge had ample opportunity to assess, first hand, Mr. Foster’s ability to understand the proceedings and assist his counsel; the judge indicated no concern as to Mr. Foster’s competency. In light of this record, Mr. Foster’s proffer of Dr. Patricia Fleming’s opinion (based on her evaluation of Mr. Foster ten years after his trial) that Mr. Foster was unable to provide the necessary assistance to his attorney to aid in his defense, simply does not “ ‘positively, unequivocally and clearly generate a real, substantial and legitimate doubt concerning his mental capacity.’” Nguyen, 131 F.3d at 1346 (quoting Carter v. Johnson, 110 F.3d 1098, 1106 (5th Cir.1997)). For this reason, we deny relief on Mr. Foster’s substantive mental competency claim.
III. Failure to Disclose the Nature of Mrs. Foster’s “Deal”
The State initially charged Mrs. Foster with the same crimes charged against Mr. Foster: murder, second degree burglary, larceny of an automobile and grand larceny. After Mrs. Foster’s preliminary hearing, the State reduced the charges against her to accessory after the fact. Mrs. Foster pleaded guilty to being an accessory after the fact and was sentenced to three concurrent five-year terms, with two and one-half years suspended. The state court received Mrs. Foster’s plea and sentenced her prior to Mr. Foster’s trial.
At Mr. Foster’s trial, Mrs. Foster acknowledged her charges had been reduced. She further testified she provided a written a statement the day after her arrest and prior to the reduction of her charges. That statement, which implicated Mr. Foster as the murderer, was consistent with her preliminary hearing testimony and her trial testimony. Mrs. Foster stated she had not been offered anything in return for her written statement, no one told her how many years imprisonment she might receive based on her statement, and no one told her what charges she would have to plead guilty to in return for writing the statement. Defense counsel thoroughly cross-examined Mrs. Foster on this issue at trial.
On appeal, Mr. Foster claims Mrs. Foster ultimately was released from custody after serving less than nine months in prison. He alleges the State failed to disclose to him the true nature of Mrs. Foster’s “deal,” thereby denying him due process of law in accordance with Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).[7] Mr. Foster bears the burden of presenting evidence to establish a Brady or Giglio violation. United States *1192 v. Gonzalez-Montoya, 161 F.3d 643, 649 (10th Cir.1998), cert. denied, — U.S. -, 119 S.Ct. 1284, 143 L.Ed.2d 377 (1999). We review such claims de novo. Id.; United States v. Molina, 75 F.3d 600, 602 (10th Cir.), cert. denied, 517 U.S. 1249, 116 S.Ct. 2510, 135 L.Ed.2d 199 (1996).
Mr. Foster’s claim the State denied him due process of law and the right to confront witnesses against him by affirmatively misleading the jury about implied or direct promises to Mrs. Foster is not supported by the record. The record makes clear that Mrs. Foster provided a statement implicating Mr. Foster prior to any reduction of her charges and without inducement by the State. Her testimony at trial did not vary from that statement; thus, we have no reason to believe the prosecution needed to make a deal with Mrs. Foster in order to make its case. Moreover, defense counsel had a full and fair opportunity to cross-examine Mrs. Foster on this issue. While Mr. Foster alleges Mrs. Foster provided testimony in exchange for a reduction of charges and lenient sentence, he provides absolutely no factual support to rebut those facts of record which show Mrs. Foster’s testimony was not conditioned on any promises of leniency. We fail to see how the fact Mrs. Foster filed an application for post-conviction relief which led to her early release from prison otherwise supports Mr. Foster’s claim, even if the government was aware of that possibility and did not oppose her application.
We find no evidence the prosecution suppressed material, exculpatory evidence. The jury knew (1) the prosecution had reduced the charges against Mrs. Foster, (2) she pleaded guilty to being an accessory to Mr. Wiley’s murder, and (3) she was sentenced to serve time in prison as a result of her participation in that crime. The fact Mrs. Foster ultimately did not have to serve her full sentence and the government did not oppose her early release simply does not give rise to a Brady or Giglio claim. Cf. Molina, 75 F.3d at 602 (the fact witnesses were allowed to plead on favorable terms subsequent to trial is not evidence the plea agreements were secretly reached prior to the witnesses’ testimony and improperly withheld from the defense). Moreover, while we acknowledge Mrs. Foster was a key witness for the prosecution and her credibility was an important issue, see Giglio, 405 U.S. at 154-55, 92 S.Ct. 763, we believe any additional evidence as to the possibility she would be released from prison prior to completing her full sentence would have been cumulative to her testimony on direct and cross-examination, and would have provided only marginal additional support to Mr. Foster’s defense. See United States v. Trujillo, 136 F.3d 1388, 1393-94 (10th Cir.), cert. denied, — U.S. --, 119 S.Ct. 87, 142 L.Ed.2d 69 (1998). This is particularly true in light of the fact the government’s case against Mr. Foster did not depend solely on Mrs. Foster’s testimony. Mr. Lynch’s testimony concerning Mr. Foster’s jail cell admissions, the investigating officers’ testimony concerning the crime scene, and the fact Mr. Foster ran away when the police approached his car in Texas, all provided additional persuasive evidence to support the conviction and sentence. Cf. Giglio, 405 U.S. at 154-55, 92 S.Ct. 763 (new trial granted where government admitted failing to disclose promise made to witness, and where the government’s case depended almost entirely on that witness’ testimony).
Finally, even if a Brady or Giglio violation occurred in connection with the full disclosure of Mrs. Foster’s “deal,” we conclude there was no reasonable probability that had the jury been informed Mrs. Foster would be released from prison after serving only nine months, it would have reached a different result. As previously noted, Mrs. Foster did not provide the only evidence against Mr. Foster. The government presented ample additional evidence to support his conviction and sentence. Under these circumstances, we conclude Mr. Foster suffered no prejudice as a result of any failure to disclose knowledge Mrs. Foster would likely obtain an early release from prison. See Newsted v. *1193 Gibson, 158 F.3d 1085, 1097 (10th Cir.1998), cert. denied, 119 S.Ct. 1509 (1999); Banks v. Reynolds, 54 F.3d 1508, 1517 (10th Cir.1995) (court must consider the cumulative impact of the evidence, in light of the entire record, including its utility to the defense and its potentially damaging impact on the prosecution’s case). His request for habeas relief on this ground therefore is denied.
IV. Failure to Instruct Regarding Accomplice Testimony
Mr. Foster claims his Sixth, Eighth and Fourteenth Amendment rights were violated when he was denied protection under Oklahoma law from being convicted on the uncorroborated testimony of an accomplice. Mr. Foster alleges the evidence at trial established that his wife was an accomplice “as a matter of law,” and that without her testimony he never would have been convicted of first-degree murder. Thus, according to Mr. Foster, he was entitled to a cautionary instruction concerning Mrs. Foster’s status as an accomplice, notwithstanding defense counsel’s failure to request such an instruction.
Even though Mr. Foster cites us to Oklahoma law requiring the corroboration of accomplice testimony, our habeas review is governed by federal constitutional principles, not state law. “The Constitution does not prohibit convictions based primarily on accomplice testimony.” Scrivner v. Tansy, 68 F.3d 1234, 1239 (10th Cir.1995), cert. denied, 516 U.S. 1178, 116 S.Ct. 1277, 134 L.Ed.2d 223 (1996). As there is no constitutional requirement that Mrs. Foster’s testimony be corroborated, we need not address his claimed deprivation of protection under state law.
Furthermore, while “[w]e have held that failure to instruct on uncorroborated accomplices’ testimony constitutes plain error,” United States v. Hill, 627 F.2d 1052, 1053 (10th Cir.1980), this court has never considered such an instruction constitutionally mandated. See Scrivner, 68 F.3d at 1239. Mr. Foster has not cited, nor have we found, any case that imposes a cautionary instruction as a constitutional requirement. Cf. Cool v. United States, 409 U.S. 100, 103, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972) (accomplice instructions “represent no more than a commonsense recognition that an accomplice may have a special interest in testifying, thus casting doubt upon his veracity”); United States v. Nolte, 440 F.2d 1124, 1126 (5th Cir.) (“the trial judge’s decision whether to give the [accomplice credibility] instruction is not a matter requiring constitutional scrutiny”), cert. denied, 514 U.S. 1115 (1995). Accordingly, in the habeas context, Mr. Foster’s burden in attacking his conviction and sentence based on an erroneous omission of the cautionary jury instruction is a heavy one- — “even greater than the showing required to establish plain error on direct appeal.” Maes v. Thomas, 46 F.3d 979, 984 (10th Cir.1995) (internal quotation marks and citation omitted). We may set aside his conviction on this ground only if, in the context of the entire trial, the failure to instruct the jury to carefully consider Mrs. Foster’s credibility as an accomplice “had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial.” Id. at 984. Mr. Foster fails to satisfy that standard.
Mr. Foster’s claim is based, in large part, on an assumption that the testimony of an accomplice should seldom, if ever, be believed. That is not the law in this circuit. United States v. Torres, 53 F.3d 1129, 1140 (10th Cir.), cert. denied, 515 U.S. 1152, 516 U.S. 883, 116 S.Ct. 220 (1995). “[S]o long as the testimony is not incredible on its face and is otherwise capable of establishing guilt beyond a reasonable doubt,” it remains solely within the province of the jury to determine the credibility of each witness. Id. at 1140. The record demonstrates Mrs. Foster’s testimony was both credible and capable of establishing guilt beyond a reasonable doubt. Mr. Foster’s trial counsel had ample opportunity to attack Mrs. Foster’s credibility and indeed brought to the jury’s attention the fact she was not a disinter *1194 ested witness. Moreover, the court instructed the jury it was their responsibility to determine the credibility of each witness and to weigh the testimony considering the bias, interest or prejudice, if any, the witness may have, and the relation of the witness to the parties and any bias or prejudice the witness may have. Under these circumstances, we conclude the trial court’s failure to give a cautionary instruction regarding accomplice testimony did not render Mr. Foster’s trial fundamentally unfair. See e.g., Maes, 46 F.3d at 985.
To the extent Mr. Foster simply challenges the sufficiency of the evidence to support his conviction, we require only that, “after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Mrs. Foster testified she witnessed Mr. Wiley’s murder at the hands of Charles Foster. The jury was entitled to discredit or believe Mrs. Foster’s testimony. Likewise, the jury was entitled to discredit or believe Mr. Lynch’s testimony that Mr. Foster admitted killing “a grocery man.” In addition, the jury heard evidence from neighbors who saw Mr. Wiley arrive at the Foster’s home the evening he was murdered, police officers who investigated the crime scene and found Mr. Wiley’s body, and a forensic doctor and dentist who described the nature of Mr. Wiley’s wounds and the force with which those injuries were inflicted. As a matter of federal constitutional law, there was sufficient evidence for the jury to convict Mr. Foster. For all these reasons, we deny habeas relief on this claim.
V. Constitutionality of Aggravating and Mitigating Circumstance Instructions
“The constitutional validity of aggravating [circumstances] is a question of law subject to de novo review.” United States v. McCullah, 76 F.3d 1087, 1107 (10th Cir.1996), cert. denied, 520 U.S. 1213, 117 S.Ct. 1699, 137 L.Ed.2d 825 (1997).
A. Continuing Threat to Society
Mr. Foster first asserts the “continuing threat” aggravating circumstance is overbroad and unconstitutionally vague as applied in Oklahoma. While Mr. Foster acknowledges this court has rejected similar arguments, see Castro, 138 F.3d at 816-17; Nguyen, 131 F.3d at 1352-54, he asks this panel to “revisit” the issue. We are not free to revisit the issue. The prior resolution binds this panel. See United States v. Foster, 104 F.3d 1228, 1229 (10th Cir.1997). Accordingly, Mr. Foster is not entitled to habeas relief on this ground.
B. Heinous, Atrocious or Cruel
Mr. Foster next asserts the “heinous, atrocious or cruel” aggravating circumstance is unconstitutionally vague and overbroad. As Mr. Foster points out, this court previously has addressed this precise issue and consistently has upheld the heinous, atrocious or cruel aggravator as applied in Oklahoma. See, e.g., Cooks, 165 F.3d at 1289-90; Duvall v. Reynolds, 139 F.3d 768, 792-93 (10th Cir.), cert. denied, - U.S. --, 119 S.Ct. 345, 142 L.Ed.2d 284 (1998). Those cases are dis-positive here. Mr. Foster’s request for relief on this ground must be denied. Foster, 104 F.3d at 1229.
Mr. Foster further argues that even if the jury was properly instructed, there was no evidence at trial the victim was conscious and suffered serious physical abuse. We conclude the record supports the jury’s finding that Mr. Wiley experienced conscious physical suffering sufficient to establish torture or serious physical abuse as interpreted by the Oklahoma courts. Mrs. Foster testified that even after Mr. Foster repeatedly struck Mr. Wiley with a baseball bat, Mr. Wiley was still breathing when Mr. Foster wrapped him in a blanket and left the house. Moreover, the medical examiner testified Mr. Wiley had blunt force lacerations to the ear, orbit of the right eye, and top of the head. Mr. Wiley’s skull was extensively fractured and he experienced *1195 massive hemorrhaging. In addition, the medical examiner testified Mr. Whey was likely alive when he suffered three stab wounds to the chest. Forensic dentists testified it would have taken a considerable amount of force to knock Mr. Wiley’s teeth out in the manner evidenced by the fragments he examined. This evidence amply supports application of the “heinous, atrocious or cruel” aggravator. Because we hold that aggravator is not unconstitutional on its face or as applied in this case, we deny Mr. Foster’s request for habeas relief on this ground.
C. Mitigating Circumstances
Finally, Mr. Foster claims the jury instructions failed to explain to jurors that they were free to consider and give effect to all mitigating circumstances, and did not have to unanimously agree as to the mitigating circumstances. Here again, this court rejected similar arguments in Cooks, 165 F.3d at 1290-92, and Duvall, 139 F.3d at 791-93. Cooks acknowledged that state courts are not constitutionally bound to present instructions concerning mitigating evidence in any particular way. 165 F.3d at 1291. This court need only ensure there is no reasonable likelihood the jury applied the challenged instruction^) in a way that prevented the consideration of relevant evidence. Id. As in Duvall and Cooks, the instructions pertaining to the consideration of mitigating circumstances in this case, as a whole, did not preclude the jurors from considering and giving effect to any and all mitigating circumstances in Mr. Foster’s favor, did not suggest the jurors had to unanimously agree as to those circumstances, and in no way mandated imposition of the death penalty. Accordingly, Mr. Foster is not entitled to habeas relief on this ground.
CONCLUSION
Having given careful consideration to each of Mr. Foster’s claims, we find no constitutional error. We therefore AFFIRM his conviction and sentence.

.The dissent touts "case law and common sense” as its basis for departure from this conclusion. "Case law and common sense” is not the standard Mr. Foster must meet to secure habeas relief. Rather, he must present evidence which, when weighed against the totality of the prosecution’s evidence, undermines our confidence in the jury's verdict, in this case. Strickland, 466 U.S. at 694, 104 S.Ct. 2052. To be sure, other courts have considered the prejudicial effect of alibi testimony that could have been, but was not presented at trial. Some have found the failure to produce available alibi testimony prejudicial. Others have not. None have adopted a per se rule. Indeed, upon critical examination it is patently clear each case is decided on its own unique set of facts, applying the very standard the majority applies here. See, e.g., Brown v. Myers, 137 F.3d 1154, 1156-58 (9th Cir.1998) (court found prejudice in light of inconsistencies in the prosecution's evidence and multiple alibi witnesses who would have conclusively placed the defendant at another location.); Lawrence v. Armontrout, 31 F.3d 662, 666-68 (8th Cir.1994) (court found no prejudice from failure to present alibi testimony of three witnesses, expressly rejecting defendant's argument that prejudice is established whenever a habeas petitioner's alibi witness testifies to a fact which, if fully believed, would be inconsistent with the petitioner's guilt.); Kubat v. Thieret, 867 F.2d 351, 362-63 (7th Cir.1989) (court found no prejudice from failure to present multiple alibi witnesses where prosecution presented significant evidence to corroborate the testimony of its chief witness, an accomplice to the murder.); Montgomery v. Petersen, 846 F.2d 407, 415-16 (7th Cir.1988) (prejudice was established where defendant was tried in two counties for two burglaries that occurred on same day. In the first trial defense counsel called an alibi witness and defendant was acquitted. Defense counsel conducted the second trial in the same manner, except that he failed to call the same alibi witness. Defendant was convicted in the second trial.); United States ex rel. Kleba v. McGinnis, 796 F.2d 947, 957 (7th Cir.1986) (court found no prejudice under circumstances where if defendant left alibi witnesses' apartment ten minutes earlier than she alleged in her affidavit, he would have had ample time to commit the crimes).

. On cross-examination, Mr. Foster stated he remained in the store for about fifteen or twenty minutes then waited outside.

. In sum, Ms. Fuller stated under oath that: she prepared her affidavit at the request of the attorney representing Mr. Foster in his post-conviction relief petition; she worked as a cashier at Weddles grocery store in April 1983; she was seventeen years old at that time; she remembered Charles Foster shopping at Weddles grocery store and “always buying diapers”; she last saw Mr. Foster on "Good Friday before Easter in April of 1983,” first, in the afternoon with a “heavy set black woman” who "tried to cash her welfare check,” and later in the evening (between 6 p.m. and 7 p.m.), alone; when Mr. Foster returned that evening he bought diapers, lettuce and tomatoes; she gave him an extra paper sack for his head because it was raining and told him he could wait in front of the store until the rain quit; Mr. Foster was in the store approximately forty-five minutes; she saw an “El Camino or Ranchero type vehicle” with furniture in the back pull in front of the store and Mr. Foster left.

. Indeed, to the extent Ms. Fuller recalls details, they are not entirely consistent with Mr. Foster's version of the events. For example, Ms. Fuller states she remembers Mr. Foster buying "diapers, lettuce and tomatoes." Mr. Foster testified he bought "Q]ust the mushrooms, lettuce, tomatoes.” Ms. Fuller recalled seeing furniture in the back of the vehicle that pulled up in front of Weddles grocery store before he left. Mr. Foster testified the "stuff” in the back was covered with a blanket.

. The dissent completely ignores the relevance of this evidence. See, e.g., United States v. Lacey, 86 F.3d 956, 973 (10th Cir.), cert. denied, 519 U.S. 944, 117 S.Ct. 331, 136 L.Ed.2d 244 (1996).

. This law has since changed to require a post-examination competency hearing " ‘only upon application of the defendant or the state or upon the formal setting of a competency hearing by the court.' " Le v. Oklahoma, 947 P.2d 535, 544-45 (Okla.Crim.App.1997) (quoting Okla. Stat. tit. 22, § 1175.4(A) (1991)), cert. denied, - U.S. -, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998).

. In his habeas petition, Mr. Foster couched this claim in the context of an unconstitutional denial of his request for an evidentiary hearing to determine whether the State offered promises of leniency to Mrs. Foster. Because he does not assert an entitlement to an evidentiary hearing on appeal, the State argues Mr. Foster has waived this claim. While we are puzzled as to why Mr. Foster has recharacterized his claim, we conclude he provided sufficient notice to the district court of his claim the State denied him due process of law by failing to reveal the true nature of promises made to Mrs. Foster to preserve the issue on appeal. We note, however, that in light of the clarity of the record as discussed above, Mr. Foster was not entitled to an evi-dentiary hearing to further develop this claim.