F I L E D
United States Court of Appeals
Tenth Circuit

NOV 23 1999

PATRICK FISHER
Clerk

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

PHILLIP DEWITT SMITH,

      Petitioner-Appellant,

v.

GARY E. GIBSON, Warden,
Oklahoma State Penitentiary;
ATTORNEY GENERAL OF THE
STATE OF OKLAHOMA,

      Respondents-Appellees.

No. 98-7066

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. No. CV-95-79-S)

---

Randy Bauman, Assistant Federal Public Defender, Death Penalty Federal Habeas Corpus Division, Oklahoma City, Oklahoma, for Petitioner-Appellant.

William L. Humes, Assistant Attorney General (W.A. Drew Edmondson, Attorney General of Oklahoma, with him on the brief), Oklahoma City, Oklahoma, for Respondents-Appellees.

---

Before **BALDOCK** , **PORFILIO** , and **MURPHY** , Circuit Judges.

---

**BALDOCK** , Circuit Judge.

Petitioner-appellant Phillip DeWitt Smith appeals from the district court's denial of his petition for habeas relief, see 28 U.S.C. § 2254, from his Oklahoma first degree murder conviction and death sentence. On appeal, he raises seven grounds for relief: 1) prosecutorial misconduct; 2) an evidentiary harpoon resulting from a witness volunteering that petitioner had kidnaped his daughter; 3) the lack of a cautionary instruction regarding an informant's testimony; 4) ineffective representation at sentencing; 5) the trial court's failure to instruct the jury on lesser included offenses; 6) double counting of aggravating circumstances; and 7) the unconstitutionality of the continuing threat aggravating circumstance. We affirm the denial of habeas relief.

I.     FACTS

Petitioner was convicted of bludgeoning to death an acquaintance, Matthew Taylor. Taylor was murdered in his apartment during the early morning hours of November 4, 1983. He had been beaten with a blunt object, most likely a hammer. When he was found the following afternoon, the victim's front pants pockets had been turned inside out.

During a party at the victim's home the previous evening, petitioner had agreed with the victim to share some marijuana. The victim had taken a twenty dollar bill from his front pants pocket, noting it was the smallest bill he had, and

gave it to petitioner to go purchase the marijuana. Petitioner never returned to the party.

At approximately midnight, petitioner borrowed a hammer from another acquaintance, indicating he was helping a friend fix a car. Petitioner then had Victor Hickman drive him to the victim's apartment. Petitioner told Hickman that he was trying to collect money people owed him because he wanted to purchase a bus ticket to California. According to Hickman, petitioner went into the victim's apartment, while Hickman waited in the car. When petitioner returned, he had a small stain of what appeared to be blood on his shirt.

In addition to this evidence, petitioner's cellmate, Billy Joe Dickson,[1] testified that petitioner admitted to him that petitioner had killed the victim. The jury convicted petitioner of first degree murder.

During sentencing, the jury found the existence of three aggravating circumstances: 1) petitioner had been convicted of a prior violent felony; 2) the murder was especially heinous, atrocious or cruel; and 3) petitioner was a continuing threat to society. After weighing those aggravating circumstances with petitioner's mitigating evidence, the jury sentenced petitioner to death.

---

[1] Although the trial transcript refers to this witness as Dickson, elsewhere in the record he is referred to as Dixon.

The Oklahoma Court of Criminal Appeals affirmed his conviction and sentence on direct appeal. See Smith v. State, 737 P.2d 1206 (Okla. Crim. App.), cert. denied, 484 U.S. 959 (1987). The Oklahoma appellate court also affirmed the denial of two applications for state post-conviction relief. See Smith v. State, 826 P.2d 615 (Okla. Crim. App.), cert. denied, 506 U.S. 952 (1992); Smith v. State, 878 P.2d 375 (Okla. Crim. App.), cert. denied, 513 U.S. 1061 (1994).

Petitioner filed his federal habeas petition February 21, 1995, prior to the enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA). That Act, therefore, does not apply in this case. See Lindh v. Murphy, 521 U.S. 320, 322-23 (1997).

## II.    PROSECUTORIAL MISCONDUCT

Petitioner alleges the prosecutor knowingly misled the jury into believing Dickson was not testifying pursuant to a deal with prosecutors, when in fact he was. See Gray v. Netherland, 518 U.S. 152, 165 (1996) (noting prosecution is forbidden from deliberately deceiving court and jury, citing Mooney v. Holohan, 294 U.S. 103, 112 (1935)); see also Giglio v. United States, 405 U.S. 150, 153 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959). Petitioner bears the burden of establishing this claim, which this court reviews de novo. See Foster v. Ward, 182 F.3d 1177, 1191-92 (10th Cir. 1999).

At the time he testified against petitioner, Dickson had been charged, in an unrelated case, with burglary, after former conviction of a felony. If convicted, he faced a possible twenty year prison sentence. In his testimony at petitioner's trial, Dickson asserted that he had no deal with prosecutors in exchange for his testimony, but that he was testifying against petitioner because petitioner had threatened Dickson while the two were jailed together. A few days after petitioner's trial, the State dropped the after former conviction of a felony portion of Dickson's pending burglary charge. He pled guilty and was released based on time already served.

Petitioner, however, asserts no credible evidence that prosecutors ever offered Dickson leniency in exchange for his testimony against petitioner. "The mere fact that . . . [a] witness[] w[as] subsequently allowed to plead on favorable terms is not evidence that . . . [a] plea agreement[] w[as] secretly reached prior to the witness['s] testimony . . .." United States v. Molina, 75 F.3d 600, 602 (10th Cir. 1996) (direct criminal appeal).

At his state post-conviction hearing, two inmates did testify that Dickson admitted to them that he had lied at petitioner's trial, about both not having a deal with prosecutors in exchange for his testimony and petitioner's jailhouse confession. Petitioner's post-conviction counsel and his investigator also asserted that Dickson had told them that his trial testimony was false and that he had

-5-

testified against petitioner pursuant to an understanding with the district attorney's office.

Nonetheless, Dickson testified at that same evidentiary hearing, affirming the truth of his trial testimony and denying any agreement with the prosecution in exchange for his testimony. The district attorney also testified, acknowledging that his office had a policy of offering lenient treatment in exchange for testimony, but asserting that he had never spoken with Dickson about his testimony prior to petitioner's trial. [2]

The Oklahoma Court of Criminal Appeals implicitly found Dickson's testimony credible. See Smith, 826 P.2d at 617. See generally Marshall v. Lonberger, 459 U.S. 422, 433-34 (1983) (even though state court did not make express credibility finding, federal court could assume state court found petitioner not credible, in light of that court's ruling); Newsted v. Gibson, 158 F.3d 1085, 1091 (10th Cir. 1998), cert. denied, 119 S. Ct. 1509 (1999) (deferring to implicit findings underlying state appellate court's determination that circumstances of case did not warrant giving lesser included offense instruction). Generally, we must presume that court's factual findings are correct. See 28 U.S.C. § 2254(d)

---

[2] We reject petitioner's argument that the prosecutor thus deceived jurors when he told them that his office did not have such a policy. The prosecutor's remarks, during closing argument, were focused solely on the lack of any deal with Dickson, rather than the existence of a broader policy in general.

(pre-AEDPA).  See generally  Sumner v. Mata , 455 U.S. 591, 592-93 (1982) (affording presumption of correctness to state appellate court's factfinding); Sumner v. Mata , 449 U.S. 539, 545-47 (1981) (same).

Petitioner, nevertheless, argues this court should not presume that the state court's credibility determination is correct in this case because he had no opportunity for discovery in the state post-conviction proceedings.  See 28 U.S.C. § 2254(d) (pre-AEDPA).  Review of the record, however, establishes that the state trial court did permit discovery in the post-conviction proceeding.  Petitioner received all requested documents that existed, in addition to obtaining the state trial court's  in camera  inspection of the prosecutor's file to determine if there was any other relevant material that had not been produced.  We, therefore, presume the state appellate court's credibility determination was correct.

Petitioner asserts that the district court erred in denying him further discovery on this issue in federal court.  A federal habeas petitioner, however, will be entitled to discovery only "if, and to the extent that, the [district court] judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."  Rule 6(a), Rules Governing Section 2254 Cases; see, e.g. , Bracy v. Gramley , 520 U.S. 899, 908-09 (1997).  Because petitioner had discovery and an opportunity to develop this evidence during the state post-conviction proceedings, the district court did not abuse it discretion in

denying further discovery in this federal habeas action.    See Bracy, 520 U.S. at 909.

Lastly, petitioner challenges as false Dickson's testimony at sentencing that petitioner possessed a shank while in jail awaiting trial.    In order to recover on this claim, petitioner had to establish that the prosecutor *knowingly* presented false testimony.   See, e.g., Medina v. Barnes, 71 F.3d 363, 367 (10th Cir. 1995); see also Gray, 518 U.S. at 164-65.  Petitioner, however, fails to allege any evidence tending to show that prosecutors knew this testimony was false.


III.    EVIDENTIARY HARPOON

Within his prosecutorial misconduct argument, petitioner also challenges the evidentiary "harpoon" resulting when Dickson, at trial, volunteered that petitioner had been charged with kidnaping his daughter.    The State had previously agreed not to present evidence regarding this incident, in response to petitioner's motion in limine.  At the close of the first stage, the trial court did instruct the jury to limit its consideration of other crimes evidence to motive. Petitioner asserts he suffered prejudice from this evidence at both the guilt and sentencing stages of the proceeding.

Petitioner will be entitled to relief on this claim only if he can establish that the admission of this testimony rendered the trial fundamentally unfair.    See, e.g.,

<u>Scrivner v. Tansy</u>, 68 F.3d 1234, 1239-40 (10th Cir. 1995). It did not. <u>See</u> <u>id.</u> (no constitutional error where government witness's testimony concerning defendant's other crimes was unsolicited). Further, admission of unadjudicated bad acts during a capital sentencing proceeding does not violate due process. <u>See, e.g.</u>, <u>LaFevers v. Gibson</u>, 182 F.3d 705, 724 (10th Cir. 1999).

## IV.     CAUTIONARY INSTRUCTION

Petitioner asserts the trial court erred in failing, sua sponte, to instruct the jurors to view Dickson's testimony, as that of an informer, with caution and distrust. Respondents contend this argument is procedurally barred. On direct appeal, the Oklahoma Court of Criminal Appeals reviewed the merits of this claim under a fundamental error analysis, holding that such an instruction was not necessary under state law. <u>See</u> <u>Smith</u>, 737 P.2d at 1213-14. This claim, therefore, is not barred. <u>See, e.g.</u>, <u>Harris v. Reed</u>, 489 U.S. 255, 266 & n.13 (1989); <u>see also</u> <u>Hooks v. Ward</u>, 184 F.3d 1206, 1215 (10th Cir. 1999) (if state court decides issue on merits, state procedural bar will not preclude federal habeas review).

Because petitioner has failed to assert a recognized federal constitutional right to a cautionary jury instruction regarding an informant's testimony, he will be entitled to habeas relief on this claim only if the trial court's refusal to give the

instruction resulted in a fundamentally unfair trial. Cf. Foster, 182 F.3d at 1193 (addressing cautionary jury instruction concerning uncorroborated accomplice testimony). Petitioner fails to make this showing. Defense counsel had ample opportunity to attack Dickson's credibility and was able to bring to the jury's attention the fact that Dickson was not a disinterested witness. See id. at 1193-94. In addition, the trial court instructed jurors that it remained their responsibility to determine a witness's credibility, after considering, among other things, any bias, prejudice or interest the witness might have in the outcome of the trial. See id. at 1194.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner asserts four ways in which his trial attorney was ineffective during sentencing. Respondents do not argue to this court that these claims are procedurally barred. See Hooks, 184 F.3d at 1216 (State must raise affirmative defense of procedural bar or risk waiving it).

Petitioner will not be entitled to habeas relief on these claims unless he can establish both that his attorney's performance was deficient and that he was thereby prejudiced. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Where counsel's alleged errors occurred during a capital sentencing proceeding, the prejudice inquiry is whether there is a "reasonable probability that, absent the

errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Id. at 695; see also Cooks v. Ward, 165 F.3d 1283, 1296 (10th Cir. 1998) (requiring court to consider strength of government's case and aggravating factors jury found to exist, as well as mitigating factors that might have been presented), cert. denied, 120 S. Ct. 94 (1999). Ineffective assistance claims are mixed questions of law and fact, reviewed by this court de novo. See, e.g., Williamson v. Ward, 110 F.3d 1508, 1513 (10th Cir. 1997).

A. Conceding Appropriateness of Death Penalty

Petitioner argues defense counsel, during his first-stage closing argument, conceded that this crime was "cruel," thus admitting the "especially heinous, atrocious or cruel" aggravating circumstance, and that the crime warranted the death penalty. Representative of the remarks petitioner challenges, defense counsel told jurors not to "kid yourselves, ladies and gentlemen. If you find that [petitioner] . . . brutally murdered [the victim] . . ., the penalty you're going to impose is going to be the very severe one." Trial tr. at 767. Defense counsel also suggested the murderer was an "animal" and he emphasized the gruesomeness of the crime scene. The uncontroverted evidence, however, including a number of gruesome photographs of the crime scene and the victim's body, established that

-11-

the victim was brutally murdered. Defense counsel could not have argued otherwise credibly.

From the tenor of his entire argument, defense counsel made these remarks for two reasons supporting his contention that petitioner was innocent. First, counsel argued that, if petitioner had wanted to rob the victim, he would not have needed to kill him, in light of the victim's intoxicated state at the time of death. Further, even if the robber thought murdering the victim was necessary, there was no need to have committed such a brutal murder. This supported defense counsel's argument to the jury that robbery was not a sufficient explanation for such a brutal slaying and that there must have been something more going on than the purported robbery--perhaps the murderer was someone other than petitioner who had a score to settle with the victim or to whom the victim owed drug money.

Secondly, defense counsel emphasized the bloodiness of the crime scene, both in his cross-examination and closing argument, to support his contention that the murderer would have had to have had blood all over him after the killing. Only Hickman testified that petitioner had what appeared to be blood on him after returning from the victim's apartment, and that was only a single spot one to two inches in diameter.

Petitioner argues both that trial counsel's argument was per se ineffective and, alternatively, was deficient performance prejudicial to petitioner under Strickland . Considering the whole of his argument, however, counsel did not "abandon[] his duty of loyalty to his client and effectively join[] the state in an effort to attain a conviction or death sentence" such that counsel's performance could be deemed per se ineffective. Davis v. Executive Dir. of Dep't of Corrections , 100 F.3d 750, 756-57, & 757 n.3 (10th Cir. 1996) (further quotation omitted); see also Osborn v. Shillinger , 861 F.2d 612, 625-26, 629 (10th Cir. 1988). Rather, he made these challenged references in support of his argument to the jury, based upon the circumstantial nature of the evidence, that petitioner did not commit this crime. He, thus, remained petitioner's advocate. See United States v. Williamson , 53 F.3d 1500, 1511-12 (10th Cir. 1995).

Further, counsel's performance was not deficient under Strickland . These remarks were reasonable trial strategy in light of the circumstantial nature of the evidence against petitioner. See Moore v. Gibson , Nos. 98-6004, 98-6010, 1999 WL 765893, at *26 (10th Cir. Sept. 28, 1999). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland , 466 U.S. at 690.

Petitioner also challenges defense counsel's second-stage closing argument, asserting counsel continued to argue in this same vein, targeting any residual

-13-

doubt the jurors might have had concerning petitioner's guilt. But "residual doubt has been recognized as an extremely effective argument for defendants in capital cases." Lockhart v. McCree, 476 U.S. 162, 181 (1986) (further quotation omitted). Such strategy was reasonable under these circumstances. See, e.g., Tarver v. Hopper, 169 F.3d 710, 715-16, 715 n.7 (11th Cir. 1999); Felker v. Thomas, 52 F.3d 907, 912 (11th Cir.), opinion supplemented on denial of reh'g on other grounds, 62 F.3d 342 (11th Cir. 1995).

B.      Failure to Prepare Petitioner to Testify at Sentencing

Petitioner claims that his attorney failed to prepare petitioner to testify at sentencing. Petitioner told jurors at sentencing that he had not committed the crime and asked them not to sentence him to death so that he would have an opportunity to prove his innocence.

In the state post-conviction proceedings, petitioner testified that counsel did not ask him if he wanted to testify until immediately prior to sentencing and did not advise him of the questions the attorney intended to ask, but rather told petitioner just to tell the jurors what he wanted to tell them. On the other hand, defense counsel testified at the post-conviction hearing that petitioner did not decide to testify at sentencing until the last minute and that counsel did discuss petitioner's testimony with him, but would not tell him what to say. The state

-14-

court did not make any factual findings or credibility determinations concerning this inconsistent testimony.

Nonetheless, even if we assume counsel's performance was deficient, petitioner has failed to establish any resulting prejudice. See Cooks, 165 F.3d at 1292-93 (court need not address both performance and prejudice if petitioner fails to make sufficient showing as to one). Petitioner fails to allege how further preparation would have enhanced his testimony. See United States v. Mealy, 851 F.3d 890, 909 (7th Cir. 1988).

Petitioner also argues that trial counsel should have used petitioner's testimony to explore the facts of his prior rape conviction. At the state post-conviction hearing, however, trial counsel testified that, as a matter of strategy, he did not go into the details of the prior conviction in order to prevent the prosecution from presenting the rebuttal testimony of the rape victim. Petitioner has failed to overcome the presumption that this was reasonable strategy under the circumstances. See Strickland, 466 U.S. at 689.

C.     Failure to Request Mental Health Expert

Petitioner argues that trial counsel was ineffective for failing to request the assistance of a mental health expert, both to rebut the State's allegation of petitioner's future dangerousness and to assist in presenting mitigating evidence. Because the State presented evidence of petitioner's future dangerousness,

-15-

petitioner would have been entitled to appointed psychiatric assistance for sentencing if he could have established the likelihood that his mental condition was a significant mitigating factor. See Rogers v. Gibson, 173 F.3d 1278, 1284 & n.2 (10th Cir. 1999), petition for cert. filed (U.S. Nov. 5, 1999) (No. 99-6954).

At the post-conviction hearing, trial counsel asserted that there was nothing that led him to believe petitioner was not competent. Further, the trial record does not contain any suggestion that petitioner's mental condition could have been a significant mitigating factor. Counsel's failure to request a psychiatric expert, therefore, was not deficient. See, e.g., Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999); cf. Roll v. Bowersox, 177 F.3d 697, 699, 701 (8th Cir. 1999) (addressing counsel's failure to investigate and establish petitioner's mental condition at time of crime), petition for cert. filed (U.S. Sept. 23, 1999) (No. 99-6356).

Even if counsel's performance was deficient, however, petitioner has not shown that this deficiency prejudiced him. A 1995 post-conviction psychological evaluation indicated only that petitioner possesses low average intelligence and suffers from organic brain damage which impairs his judgment and causes him to act impulsively. While this evaluation would have been proper mitigating evidence, this court has, "on numerous occasions determined that . . . evidence of low I.Q. and/or organic brain damage" "does not outweigh evidence

supporting . . . multiple aggravating circumstances," Foster, 182 F.3d at 1189, citing cases. The same is true here, in light of the strength of the evidence supporting the aggravating circumstances, the nature of the crime and the limited mitigating effect of this psychiatric evidence.

D.    Failure to Investigate Mitigating Evidence Adequately

Petitioner contends that defense counsel was ineffective for failing to investigate other possible mitigating evidence. Counsel has a duty to conduct reasonable investigation for mitigating evidence or to make a reasonable decision that particular investigation is unnecessary. See, e.g., Stouffer v. Reynolds, 168 F.3d 1155, 1167 (10th Cir. 1999). "In a capital case the attorney's duty to investigate all possible lines of defense is strictly observed." Id. (further quotation omitted); see also Boyd v. Ward, 179 F.3d 904, 915 (10th Cir. 1999). That duty includes investigating petitioner's background. See Duvall v. Reynolds, 139 F.3d 768, 778 (10th Cir.), cert. denied, 119 S. Ct. 345 (1998).

Even assuming counsel's investigation and preparation of mitigating evidence was deficient, petitioner is unable to show prejudice. Petitioner submits the affidavits and deposition testimony of a number of people indicating that, had they been asked, they would have testified in petitioner's behalf at sentencing. Those witnesses include a number of family members, the mothers of petitioner's two children, friends, his childhood pastor, a coach and a former boss. These

-17-

witnesses assert they could have offered testimony concerning petitioner's close family; the effect of his mother's death on him; his love and care for his children and his family; his reliability and good attitude at work; his easy going, likable personality; his school and athletic activities; his church attendance as a youth; his politeness and respect for others; and his history of nonviolence. Petitioner also asserts that the testimony of the mother of his child living in California could have ameliorated the earlier evidence concerning his kidnaping his daughter.

Petitioner, however, is unable to show that this mitigating evidence would have resulted in the jury sentencing him to life in prison, in light of the brutal and senseless nature of this crime and the strength of the State's evidence supporting the three aggravating circumstances, including evidence of a prior rape conviction, his threatening a cellmate, and his possession of a weapon in jail. See Boyd, 179 F.3d at 918. ("Even if we assume the failure to present mitigating evidence in the form of testimony from childhood acquaintances and family members is deficient performance," petitioner was unable to establish prejudice in light of existence of minimal other mitigating evidence and overall strength of State's case against petitioner, including facts of crime itself); see also Foster, 182 F.3d at 1189.

## VI.  LESSER INCLUDED OFFENSE INSTRUCTION

Petitioner argues that the trial court erred in not instructing the jury on second degree felony murder or first degree manslaughter, in violation of Beck v. Alabama, 447 U.S. 625 (1980). Beck requires the trial court to instruct the jury in a capital case on a lesser included noncapital offense if the evidence would support giving such an instruction. See id. at 627; see also Hopper v. Evans, 456 U.S. 605, 610-12 (1982); Hooks, 184 F.3d at 1223.

Because petitioner did not request the trial court instruct the jury on any lesser included offense, however, he cannot prevail on this claim. See Hooks, 184 F.3d at 1234. This court, relying in part on Beck, has noted that "in the context of instructions on lesser included offenses, we see particular strategy reasons why a defendant might not want to present the jury with a compromise opportunity." Id. Therefore,

> [w]here a state has in place a system by which a criminal defendant has a right to an instruction on lesser included offenses supported by the evidence, as Oklahoma does, and the defendant chooses not to request an instruction -- thereby failing to alert the court to the propriety of such an instruction -- Beck does not require reversal on federal habeas.

Id. at 1235.

-19-

## VII.   DUPLICATIVE AGGRAVATING CIRCUMSTANCES

Petitioner argues that all three aggravating circumstances found by the jury--that the murder was especially heinous, atrocious or cruel, petitioner had a prior violent felony conviction, and he presented a continuing threat to society--unconstitutionally overlap.  "'[D]ouble counting of aggravating factors, especially under a weighing scheme, [such as Oklahoma's capital procedure,] has a tendency to skew the weighing process and creates the risk that the death sentence will be imposed arbitrarily and thus, unconstitutionally.'"    Id. at 1239 (quoting  United States v. McCullah  , 76 F.3d 1087, 1111 (10th Cir. 1996)).  The applicable test "is not whether certain evidence is relevant to both aggravators, but rather, whether one aggravating circumstance 'necessarily subsumes' the other[s]."  Cooks , 165 F.3d at 1289 (quoting   McCullah , 76 F.3d at 1111);  see also  Johnson v. Gibson  , 169 F.3d 1239, 1252 (10th Cir.),   cert. denied , 1999 WL 688740 (U.S. Nov. 1, 1999) (No. 99-5964)  (U.S. July 26, 1999) (No. 99-5964).  None of the aggravating circumstances in this case "necessarily subsumes" either of the other aggravators.   See Hooks , 184 F.3d at 1239;  see also  Johnson , 169 F.3d at 1252;  Cooks , 165 F.3d at 1289.

## VIII.  CONTINUING THREAT AGGRAVATING CIRCUMSTANCE

Petitioner argues that Oklahoma's "continuing threat" aggravating circumstance is unconstitutionally vague and overbroad because it fails to narrow the class of murderers eligible for a death sentence.  This court has previously rejected this argument.    See, e.g. , Castro v. Ward , 138 F.3d 810, 816-17 (10th Cir.),  cert. denied , 119 S. Ct. 422 (1998);   see also, e.g. , Moore , 1999 WL 765893, at *23;  Hooks , 184 F.3d at 1238-39;   Foster , 182 F.3d at 1194;   LaFevers , 182 F.3d at 720.

## IX.    CONCLUSION

Having carefully considered the record and the parties arguments asserted on appeal, we AFFIRM the district court's denial of      § 2254 relief.  The court also denies petitioner's "Motion to Remand," filed with this court November 16, 1999.